Case 17-22729-GLT   Doc 69   Filed 01/03/18   Entered 01/03/18 08:45:53   Desc Main
Document   Page 1 of 8

FILED
1/3/18 8:34 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUTPCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 17-22729-GLT |
| | Chapter 11 |
| CITY OF PITTSBURGH PROPERTY DEVELOPMENT, INC., | |
| *Debtor.* | |
| MCKEESPORT AREA SCHOOL DISTRICT, CITY OF MCKEESPORT, & SOUTH ALLEGHENY SCHOOL DISTRICT, | Related to Dkt. Nos. 31, 35 |
| *Movants,* | |
| v. | |
| CITY OF PITTSBURGH PROPERTY DEVELOPMENT, INC., | |
| *Respondent.* | |

## MEMORANDUM OPINION

Counsel:   Jeffrey T. Morris for the Debtor/Respondent, City of Pittsburgh Property Development, Inc.
Amanda Mulheren for Movants McKeesport Area School District and City of McKeesport
Jennifer Cerce for Movant South Allegheny School District

Various taxing authorities have filed separate motions seeking stay relief under 11 U.S.C. § 362 and FED. R. BANKR. P. 4001 and 9014. The first motion was jointly filed by the McKeesport Area School District and City of McKeesport (together, the "McKeesport Taxing Authorities") and the second motion is pursued by the South Allegheny School District ("South Allegheny").[1] Both motions present similar factual and legal issues. After reviewing these

---

[1] Dkt. Nos. 31, 35.

matters, the Court concludes that the Debtor, City of Pittsburgh Property Development, Inc., filed its bankruptcy petition in the present case as "part of a scheme to delay, hinder, or defraud" the movants through the non-consensual transfer of real property upon which the taxing authorities hold liens. Accordingly, the Court will grant *in rem* relief under 11 U.S.C. § 362(d)(4)(A) in favor of the taxing authorities.

## I.

On May 26, 2016, the McKeesport Taxing Authorities obtained a judgment in the amount of $25,462.18 in a sheriff's sale proceeding initiated under a *Writ of Scire Facias Sur Tax Lien and Statement* against real property located at 315, 317, and 321 5th Ave. in McKeesport, Pennsylvania ("McKeesport Properties").[2] The McKeesport Properties are contiguous and contain a vacant commercial structure.[3] At the time the judgement was issued, PGH Real Estate Experts LLC ("PGH") was the owner of the McKeesport Properties.[4]

The sheriff's sale proceedings were stayed on March 3, 2017 when PGH filed a *pro se* voluntary petition for bankruptcy relief under chapter 11 of title 11 of the U.S. Code.[5] Two weeks later, the case was dismissed when PGH failed to timely submit its bankruptcy schedules.[6]

On June 30, 2017, PGH entered into a payment plan agreement with Keystone Collections Group, the tax collector for the McKeesport Taxing Authorities, to cure an outstanding

---

[2] Dkt. No. 31 at ¶ 2–4; Dkt. No. 49 at ¶ 2 (admitting the allegation).

[3] See Audio Recording of Hearing Held in Courtroom A, November 7, 2017 ("Hrg. Audio") at 10:39:26.

[4] Ex. A., Dkt. No. 31-1 at 1; Hrg. Audio at 10:43:24 (admitting the exhibit accurately reflects the transaction history). McKeesport Development Corp. was the named respondent in the state court proceeding because it was the record owner of the McKeesport Properties at the time as PGH neglected to record its deed until December 14, 2016. Id. McKeesport Development Corp. is not associated with either PGH or the Debtor in the present case. Id. at 10:41:46.

[5] In re PGH Real Estate Experts LLC, Case No. 17-20835 (Bankr. W.D. Pa. Mar. 3, 2017).

[6] Id. at Dkt. No. 11. The case was also postured for dismissal because no attorney had entered an appearance on behalf of PGH as required by 28 U.S.C. § 1654 and W.PA.LBR 9010-2(d). Id. at Dkt. No. 9.

2

tax delinquency of $46,253.18 on the McKeesport Properties.[7] The agreement required PGH to remit a good-faith payment of $8,000 with $2,000 due upon signing and an additional $6,000 due by July 28, 2017.[8] The balance of the payments were to be made in a monthly amount of $3,200 until the delinquency was satisfied.[9] The agreement states that PGH is the owner of the McKeesport Properties and provides that the McKeesport Taxing Authorities may proceed with a sheriff's sale in the event of a default by PGH.[10] Although PGH remitted the initial $2,000, it defaulted on its remaining obligations under the agreement.[11]

On the same day PGH entered into the agreement, it transferred the McKeesport Properties to the Debtor.[12] According to the deed recorded on August 4, 2017, PGH received $500 from the transfer. There is no evidence suggesting the Debtor tendered any additional consideration or alerted the McKeesport Taxing Authorities to the transfer.[13] The Debtor then petitioned for relief under chapter 11 of title 11 of the U.S. Code in the present case on July 2, 2017, though it failed to disclose the McKeesport Properties on its initial bankruptcy schedules.[14]

South Allegheny's experience was similar to that of the McKeesport Taxing Authorities. On October 20, 2016, it initiated an *in rem* proceeding to pursue a sheriff's sale of

---

[7] Ex. C, Dkt. No. 31-3 at 1; Dkt. No. 49 at ¶ 5 (admitting that PGH entered into the agreement).

[8] Id.

[9] Id.

[10] Ex. C, Dkt. No. 31-3 at 1.

[11] Dkt. No. 31 at ¶ 10; Dkt. No. 49 at ¶ 6 (admitting that PGH remitted the initial $2,000 payment).

[12] Ex. D, Dkt. No. 31-4 at 1; Dkt. No. 49 at ¶ 7 (admitting the exhibit accurately reflects the transaction history).

[13] Ex. D, Dkt. No. 31-4 at 1.

[14] Schedule A/B, Dkt. No. 25 at 7.

real property located at 539 Monongahela Ave. in Glassport, Pennsylvania ("Glassport Property") and obtained a judgment for $37,871.85 on January 11, 2017.[15] At the time, Adelita Enterprises, Inc. was the record owner of the Glassport Property.

On June 30, 2017, Adelita entered into an agreement with Keystone (as tax collector for South Allegheny) and MBM Collections (as tax collector for the Borough of Glassport) to cure an outstanding tax delinquency of $26,019.88.[16] The agreement required Adelita to remit a good-faith payment of $10,000 to Keystone and $3,000 to MBM on or before July 15, 2017, followed by six monthly payments of $600 to Keystone and $169.98 to MBM, with final payments of $7,000 to Keystone and $2,000 to MBM.[17] The agreement also states that Adelita is the owner of the Glassport Property and provides that South Allegheny and the Borough of Glassport may proceed with a sheriff's sale in the event of a default by Adelita.[18] Adelita defaulted on its obligations by failing to make any of the required payments under the agreement.[19]

Notwithstanding the terms of the Glassport agreement and Adelita's representations concerning its ownership of the subject property, the Debtor recorded a deed for the Glassport Property on July 28, 2017 showing that Adelita had actually transferred the property on November 1, 2016.[20] The recited consideration for the transfer is $1, and there is no evidence suggesting the Debtor tendered any additional consideration.[21] The Debtor admits that the transfer

---

[15]  Dkt. No. 35 at ¶ 2–4; Dkt. No. 40 at ¶ 2 (admitting the allegations).

[16]  Ex. A, Dkt. No. 35-1; Dkt. No. 40 at ¶ 3 (admitting that Adelita entered into the Glassport agreement).

[17]  Ex. A, Dkt. No. 35-1 at 1.

[18]  Id.

[19]  Dkt. No. 35 at ¶ 6; Dkt. No. 40 at ¶ 4 (admitting the allegation).

[20]  Ex. B, Dkt. No. 35-2 at 1.

[21]  Id.

did occur in November but argues that Adelita nevertheless held the title in fee when it entered into the Glassport agreement in June the following year.[22] The Glassport agreement does not mention any division of legal and equitable interests between Adelita and the Debtor.[23]

It is significant that all three entities involved in this matter—PGH, Adelita, and the Debtor—have common ownership.[24] During the relevant period, Prasad Maragabandhu[25] was the sole shareholder of each entity and he authorized the bankruptcy filings for PGH and the Debtor.[26]

The Debtor has not provided any business justification for the transfer of the McKeesport Properties or the Glassport Property.[27] It further admits that the transfers occurred without the consent of the taxing authorities.[28]

## II.

In rem relief is warranted for creditors holding secured claims against real property "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . [the] transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval."[29] The movants bear the

---

[22] Dkt. No. 40 at ¶ 5.

[23] See Ex. A, Dkt. No. 35-1.

[24] Hrg. Audio at 10:41:12.

[25] Maragabandhu is also known as Prasad Bandhu.

[26] See Dkt. No. 25 (identifying Maragabandhu as 100% shareholder of the Debtor); In re PGH Real Estate Experts, LLC, Case No. 17-20835-GLT, Dkt. No. 1 (filed by Prasad Bandhu).

[27] Hrg. Audio at 10:45:06 ("That I cannot answer because I was not involved in the transaction."); id. at 10:46:43 ("Again, that was before my time, so I'm not certain.").

[28] Hrg. Audio at 10:41:22.

[29] 11 U.S.C. § 362(d)(4)(A). Courts may also grant in rem relief under § 362(d)(4)(B) if the scheme involved "multiple filings" affecting the property. On its face, this subsection is inapplicable to the Glassport Property because it "must include at least two bankruptcy filings." In re Van Eck, 425 B.R. 54, 70 (Bankr. D. Conn.

burden of proof to show the transfers were nonconsensual and part of such a scheme.[30] In the context of § 362(d)(4), a "scheme . . . implies a level of insidiousness and deceitfulness."[31]

The timing of a bankruptcy filing in relation to a transfer impacts the determination of whether it may be part of such a scheme. Courts have held that nonconsensual transfers warrant *in rem* relief if they were "made on the eve of a bankruptcy filing."[32] In contrast, another bankruptcy court held that a transfer that preceded a bankruptcy filing by nearly a year "weighs against a finding of a filing being part of . . . a scheme."[33] Here, the McKeesport Properties were transferred on the eve of the Debtor's bankruptcy filing, which occurred just two days later. The timing of the Glassport Property is also suspect because although the transfer occurred the prior year, the Debtor did not record the deed until it had already commenced its bankruptcy case, and neither Bandhu nor Adelita made South Allegheny aware of any division of the ownership interest when they entered into the payment plan agreement.

Transfers are generally not part of a scheme to delay, hinder, or defraud where an adequate justification for the transaction exists. In <u>In re 177 Weston Road, LLC</u>, the court held that the non-consensual transfer of a mortgaged property by the mortgagor and his guarantors to a newly formed limited-liability company that petitioned for chapter 11 relief to avoid a sheriff's sale did not warrant *in rem* relief.[34] There, the mortgagor "persuasively testified" that he

---

[30] 2010). To the extent two bankruptcy filings affected the McKeesport Properties—one by PGH and one by the Debtor—it is the transfer from PGH to the Debtor that is compelling.
In re Everton Aloysius Sterling, 543 B.R. 385, 394 (Bankr. S.D.N.Y. 2015).

[31] In re 177 Weston Rd., LLC, 2011 WL 3032745 at *2 (Bankr. D. Conn. July 22, 2011).

[32] Everton, 543 B.R. at 395 (citing In re PDPA, Inc., 2012 WL 254183 at *1–2 (D. Conn. June 12, 2012)).

[33] Id.

[34] 177 Weston Rd., 2011 WL 3032745 at *2.

transferred the property so that only one entity would hold title and to prevent the former interest holders from filing individual bankruptcies to forestall foreclosure.[35] He also disclosed that he had first tried to "actively and aggressively market the property," and he indicated "his willingness to use funds from the sale of other property he owns to satisfy claims against the [debtor]."[36] Here, the Debtor could not provide any justification for the transfers despite direct questioning on this issue. It made no representation about any benefit the transfers were meant to achieve, nor did it offer any explanation that could qualify for deference under the business judgment standard. To the extent there may be some justification buried in the present facts, the Debtor has not revealed it nor will the Court independently seek it out.

Similarly, a showing of good faith weighs against the existence of a scheme to delay, hinder, or defraud. In Fed. Nat'l Mortg. Ass'n v. Bruckner, the debtor–principal of several distressed limited-liability companies transferred all their secured properties to himself prior to filing his bankruptcy petition.[37] The court held that although he handled these transfers "clumsily," *in rem* relief was not warranted because his "intent . . . was to proceed with a [single] plan for reorganization in good faith."[38] Here, there was no inelegant yet well-intentioned effort. Rather, the transfers appear to have been effectuated for the sole purpose of creating another obstacle for the taxing authorities to overcome in their collection efforts. PGH transferred the McKeesport Properties while the ink was still drying on the signature page of the McKeesport agreement, while Adelita apparently entered into the Glassport agreement knowing full well it had already transferred the Glassport Property to the Debtor during the previous year. These circumstances

---

[35] Id.

[36] Id.

[37] Fed. Nat'l Mortg. Ass'n v. Bruckner, 489 B.R. 93, 100 (E.D. Wis. 2012).

[38] Id.

demonstrate a clear lack of good faith and have drawn the taxing authorities into a shell game as they chase their security interests, always a step behind.

### III.

For the foregoing reasons, the Court finds that adequate cause exists for *in rem* relief. Accordingly, the Court shall grant the motions of the McKeesport Taxing Authorities and South Allegheny for relief from the automatic stay under 11 U.S.C. § 362(d)(4)(A). A separate order will issue.

Dated:      January 3, 2018

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor
Debtor's counsel
Movants
Movants' counsel